**IN RE: Frances William DIXON, Debtor.**

**Case No. 12–60750**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Signed April 21, 2015

Byron H. Nolen, The Nolen Law Firm, PLLC, Inkster, MI, for Debtor, Frances William Dixon.

Thomas J. Budzynski, Thomas J. Budzynski PC, Clinton Township, Michigan, for Court Officers Michael Jones and Victor Lotycz.

**AMENDED SECOND OPINION (FOLLOWING EVIDENTIARY HEARING) REGARDING (1) "MOTION TO SET ASIDE ORDER DATED 10/31/2012;" AND (2) "DEBTOR'S MOTION FOR SANCTIONS AND TO ENFORCE OCTOBER 31, 2012 [ORDER] TO RETURN 2002 SUZUKI MOTORCYCLE TO DEBTOR"**

Thomas J. Tucker, United States Bankruptcy Judge

## I. Introduction

This case is before the Court on two competing motions: (1) a motion by Michael Jones, Court Officer, entitled "Motion to Set Aside Order Dated 10/31/2012 (Docket # 21)" (Docket # 22, the "Court Officer Motion"); and (2) a motion by the Debtor entitled "Debtor's Motion for Sanctions and to Enforce October 31, 2012 [Order] to Return 2002 Suzuki Motorcycle to Debtor" (Docket # 23, the "Debtor's Motion")(collectively, the "Motions"). In a previous written opinion addressing these Motions (the "Previous Opinion"), the Court decided certain issues of law, and concluded that an evidentiary hearing was required. *See In re Dixon,* 500 B.R. 869 (Bankr.E.D.Mich.2013).[1] The Court then held an evidentiary hearing.

The Court has considered the testimony presented and the exhibits admitted into evidence at the evidentiary hearing, and the arguments of counsel. For the reasons stated in this opinion, the Court will enter an order granting the Court Officer Motion, and denying the Debtor's Motion.

## II. Background and certain undisputed facts

The Court stated the following background, and the following facts, in its Previous Opinion, and reiterates them now.

---

**1.** The Previous Opinion is filed at Docket # 35 in this case.

As the Court stated in the Previous Opinion,

> [T]he Debtor's motorcycle was sold at an execution sale, by auction, on the day the Debtor filed this bankruptcy case. The Debtor contends that the sale was a violation of the automatic stay under 11 U.S.C. § 362(a), and therefore is voidable, because the sale occurred after the bankruptcy petition was filed. The Court Officer involved in the sale, Michael Jones, disagrees, and contends that the sale was completed before the bankruptcy case was filed.

> The Debtor in this case filed his voluntary Chapter 7 bankruptcy petition on September 12, 2012 at 4:44 p.m. Before he did so, a judgment creditor caused an execution seizure of the Debtor's 2002 Suzuki motorcycle. An execution sale was noticed for September 12, 2012 at 4:00 p.m. Court Officer Victor Lotyz conducted the sale, assisted by Court Officer Michael Jones. It is undisputed that the Court Officer began and ended the public auction of the motorcycle minutes *before* Debtor filed his bankruptcy petition, and, therefore, before the automatic stay arose under 11 U.S.C. § 362(a). It is also undisputed that the successful (and only) bidder at the sale was R.J. Luczak Enterprises, whose President is Rick Luczak.

> On October 10, 2012, Debtor filed a motion to void the sale and to compel the return of the motorcycle to him. [Docket # 16]. His motion named as respondents the Court Officer Michael Jones and the purchaser. After no timely response was filed to the motion, Debtor filed a certificate of no response and the Court entered an order granting the motion. The order [Docket # 21, the "Voiding Order"] ... stated, in pertinent part:

>> IT IS FURTHER ORDERED that the sale of Debtor's 2002 Suzuki Motorcycle, as described in the Motion, is declared to be void because the sale was done in violation of the automatic stay, and the motorcycle must be returned to the Debtor immediately.

> ... Court Officer Michael Jones [promptly] filed a motion to vacate the [Voiding Order, Docket # 22]. Debtor then filed ... a motion to enforce the [Voiding] Order and for sanctions. [Docket # 23].

> The Court held [an initial] hearing on these motions, ... [and then] ordered the Debtor and the Court Officer to file post-hearing briefs on the issue of "when the execution sale by auction of Debtor's 2002 Suzuki motorcycle was complete and final."[2]

After the parties timely filed their briefs, the Court issued its Previous Opinion, which is discussed further below.

### III. Jurisdiction

The Court reiterates and again adopts what it said in its Previous Opinion, about this Court's subject matter jurisdiction and the core nature of this contested matter:

> This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

> ■ This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See*

---

2. *Dixon,* 500 B.R. at 870–71 (italics in original)(footnotes omitted).

*Allard v. Coenen (In re Trans–Industries, Inc.)*, 419 B.R. 21, 27 (Bankr. E.D.Mich.2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.* namely Bankruptcy Code § 362(a). And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See Allard v. Coenen,* 419 B.R. at 27.[3]

## IV. Discussion

### A. The issue of Michigan law decided by the Court's Previous Opinion

In the Previous Opinion, the Court decided the following question of Michigan law: "when a judgment creditor causes a motorcycle to be sold at an execution sale, what events must occur before ownership of the motorcycle changes from the judgment debtor to the purchaser?"[4] As the Court noted, this question

> is important in this case because the Debtor's motorcycle was sold at an execution sale, by auction, on the day the Debtor filed this bankruptcy case. The Debtor contends that the sale was a violation of the automatic stay under 11 U.S.C. § 362(a), and therefore is voidable, because the sale occurred after the bankruptcy petition was filed. The Court Officer involved in the sale, Michael Jones, disagrees, and contends that the sale was completed before the bankruptcy case was filed.[5]

The Court's Previous Opinion quoted from the leading Sixth Circuit case on the voidability of post-petition acts that violate the automatic stay, *Easley v. Pettibone Michi-gan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993):

> In summary, we hold that actions taken in violation of the automatic stay are invalid and voidable and shall be voided absent limited equitable circumstances. We suggest that only where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will the protections of section 362(a) be unavailable to the debtor.[6]

After discussing Michigan law and the parties' arguments, this Court held that the Michigan Vehicle Code, rather than Michigan's version of Article 2 the Uniform Commercial Code, governed the question presented. And the Court held that in this situation, involving an execution auction sale, and thus a transfer of the Debtor's motorcycle "by operation of law," Michigan law is as follows:

> The [Michigan Vehicle Code (the "MVC")] governs registration, titling, sale, transfer, ownership and regulation of motor vehicles. Mich. Comp. Laws Ann. §§ 257.1 to 257.923. Motorcycles are considered motor vehicles under the MVC. *See* Mich. Comp. Laws Ann. §§ 257.33; 257.31; *People v. Smith,* 156 Mich. 173, 120 N.W. 581, 582 (1909)(holding that motorcycles are motor vehicles).

> Under Mich. Comp. Laws Ann. § 257.216, with exceptions not applicable here, every motor vehicle "is subject to the registration and certificate of title provisions" of the MVC. An owner of a

---

**3.** *Id.* at 871.

**4.** *Id.* at 870.

**5.** *Id.* (footnote omitted).

**6.** *Id.* at 870 n. 1.

vehicle must "apply to the secretary of state, upon an appropriate form furnished by the secretary of state, for the registration of the vehicle and issuance of a certificate of title for the vehicle." Mich. Comp. Laws Ann. § 257.217(1). Once a certificate of title is issued, it is "valid until canceled by the secretary of state for cause or upon a transfer of an interest shown on the certificate of title." Mich. Comp. Laws Ann. § 257.226(7).

If ownership of a vehicle passes by operation of law, "upon furnishing satisfactory proof of that ownership to the secretary of state, the person acquiring the vehicle may procure a title to the vehicle regardless of whether a certificate of title has ever been issued." Mich. Comp. Laws Ann. § 257.236(1). The MVC further provides:

> [u]pon the delivery of a motor vehicle and the transfer, sale, or assignment of the title or interest in a motor vehicle by a person, including a dealer, the **effective date of the transfer of title or interest in the vehicle is the date of signature on either the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee.**

Mich. Comp. Laws Ann. § 257.233(9) (emphasis added).[7]

This Court then held that:

> Under the provisions of the MVC quoted above, particularly Mich. Comp. Laws Ann. § 257.233(9), each of the following events had to occur before title to the Debtor's motorcycle passed to the execution sale purchaser: (1) "delivery" of the motorcycle to the purchaser; (2) "the transfer, sale, or assignment of the

title or interest in" the motorcycle; and (3) "signature on either the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee."[8]

In the Previous Opinion, the Court explained why an evidentiary hearing was necessary:

> Applying the MVC provisions discussed above, the Court concludes that an evidentiary hearing is necessary to determine whether title to the motorcycle passed to the execution sale purchaser before the Debtor filed his bankruptcy petition. If it did, then the sale of Debtor's motorcycle was not a violation of the automatic stay. If it did not, then the motorcycle sale occurred post-petition, and the sale violated the automatic stay.

> It is clear from the undisputed facts in this case that neither of the following two events necessary to change ownership of the motorcycle—"delivery" of the motorcycle to the execution sale purchaser; and execution of an "application for title or assignment of the certificate of title by the purchaser, transferee, or assignee" within the meaning of Mich. Comp. Laws Ann. § 257.233(9)—had yet occurred at the moment the "hammer fell" concluding the auction of the Debtor's motorcycle. And there is a factual dispute about when these events did occur, and whether they occurred before or after Debtor's bankruptcy petition was filed.

> The affidavits and documents filed to date by the parties indicate, among other things, that (1) the Court Officer signed and gave to the execution sale purchaser a bill of sale for the motorcycle, dated "9–12–2012;" (2) the purchaser signed a form entitled "Statement of

---

7.  *Id.* at 872–73.

8.  *Id.* at 873.

Vehicle Sale" that is dated "9 12 2012" and filed that document with the Michigan Secretary of State's office; and (3) the Michigan Secretary of State characterized this "Statement of Vehicle Sale" document as an application for title, and issued a certificate of title to the purchaser based on this form. [ (Footnote 7, citing Docket # 31, documents at Ex. C., omitted) ]. The purchaser's signature on the "Statement of Vehicle Sale" therefore may constitute the "signature on ... the application for title ... by the purchaser, transferee, or assignee," within the meaning of Mich. Comp. Laws Ann. § 257.233(9). But the evidence currently in the record is either inconclusive or in conflict on the questions of exactly when the bill of sale was given to the purchaser by the Court Officer; when the purchaser signed the "Statement of Vehicle Sale" form; and when the Court Officer "delivered" the motorcycle to the purchaser, within the meaning of § 257.233(9). The Court cannot determine, without holding an evidentiary hearing, which of these events, if any, occurred before the moment the Debtor filed his bankruptcy petition on September 12, 2012, rather than after that moment.[9]

The Court stands by all of its holdings in the Previous Opinion.

## B. The Court's findings and conclusions based on the evidence presented at the evidentiary hearing

At the evidentiary hearing, the Debtor presented testimony of one witness, Rick Luczak, and by agreement of the parties, the Court admitted into evidence the Debtor's Exhibits A through D, and the Court Officer's Exhibits 1 through 4. Because the Debtor's exhibits and the Court Officer's exhibits are the same, the Court will cite only the Debtor's exhibits in this opinion. Counsel for the Court Officers Michael Jones and Victor Lotycz (the "Court Officers") presented no witnesses, and asked no questions of the Debtor's witness Rick Luczak.[10]

As noted above, Rick Luczak is the person who successfully bid on the Debtor's motorcycle at the auction sale. Mr. Luczak purchased the motorcycle in the name of his business, "R J Luczak Enterprises."[11] Based on Mr. Luczak's testimony, which the Court finds credible and which was not contradicted by any other testimony or exhibit presented at the evidentiary hearing, the Court finds the following facts.[12]

---

**9.** *Id.* at 874–75.

**10.** A transcript of the evidentiary hearing is filed in this case at Docket # 42, and the transcript will be cited in this opinion as "Tr. __," while the Debtor's exhibits will be cited as "DX–__."

**11.** *See* DX–A (second page) and DX–B.

**12.** Before the Court issued its Previous Opinion, and before the evidentiary hearing, the parties filed the following affidavits: the Debtor filed three affidavits of his own (attached as exhibits to Docket ## 16, 23, and 31), and the Court Officers filed three affidavits—by the Court Officers Victor Lotycz and Mike Jones, and by Rick Luczak. (Exhibits attached to Docket # 30). Of these affiants,

only Rick Luczak testified at the evidentiary hearing. No party offered any of the previously-filed affidavits as exhibits at the evidentiary hearing, or asked that the Court consider the affidavits in making its findings from the evidentiary hearing. And, the Court noted in its Previous Opinion, there are conflicts in the facts alleged in the affidavits. For these reasons, and because none of the affiants other than Rick Luczak gave live testimony at the evidentiary hearing, such that the Court could better judge the credibility of the affiants by observing their live testimony, the Court credits the live testimony of Rick Luczak to the extent there is anything inconsistent between that live testimony and any of the affidavits.

The following events occurred on September 12, 2012, *before* the Debtor's bankruptcy petition was filed with this Court at 4:44 p.m. that day:

1. Court Officer Mike Jones began the public auction sale, which included as the first item to be sold the Debtor's motorcycle, promptly at 4:00 p.m.[13]

2. Rick Luczak was the successful bidder for the Debtor's motorcycle, having bid $1,225.00. The bidding and auction for the Debtor's motorcycle ended no later than 4:05 p.m., at which time the Court Officer accepted Luczak's bid.[14]

3. By no later than 4:30 p.m., Rick Luczak had paid the Court Officer his successful bid amount, in cash, received a signed bill of sale from the Court Officer for the motorcycle (DX–B), and took possession of the motorcycle by loading it onto his trailer, which was in the parking lot where the public auction had occurred.[15]

From these facts it is clear that two of the three events needed under Michigan law to transfer ownership of the motorcycle to the purchaser Mr. Luczak occurred *before* the Debtor filed his bankruptcy petition at 4:44 p.m. on September 12, 2012—namely, (1) "delivery" of the motorcycle to the purchaser Mr. Luczak; and (2) "the transfer, sale, or assignment of the title or interest in a motor vehicle by a person," Mich. Comp. Laws § 257.233(9), by the Court Officer having concluded the auction and accepted Mr. Luczak's winning bid, and giving Mr. Luczak a signed bill of sale for the motorcycle (DX–B). Because

these actions occurred before the bankruptcy petition was filed and the automatic stay arose under 11 U.S.C. § 362(a), none of these actions was a violation of the automatic stay.

The third event that had to occur under Michigan law before ownership of the motorcycle changed to Mr. Luczak, however, did not occur until later on September 12, *after* the Debtor filed his bankruptcy petition at 4:44 p.m. That third event is the "signature" on "either the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee." Mich. Comp. Laws § 257.233(9). As the statute says, it is "the date of" that signature that is the "effective date of the transfer of title or interest in the vehicle.")

The Bill of Sale that the Court Officer signed and gave to Mr. Luczak right after the auction sale concluded, DX–B, was not signed by Mr. Luczak, who was "the purchaser, transferee, or assignee" within the meaning of § 257.233(9). Nor was that Bill of Sale either an "application for title" or an "assignment of the certificate of title" within the meaning of § 257.233(9). And in this case, there was no "assignment of the certificate of title." Rather, there was only an "application for title" that Mr. Luczak made to the Michigan Secretary of State. That application for title is in the form of the document that appears as the second page of DX–A, a document entitled "Statement of Vehicle Sale," which was signed by "the purchaser" Mr. Luczak as required by § 257.233(9).[16] But Mr. Luczak prepared that document, and signed it, only *after* Debtor's bankruptcy petition was filed at 4:44 p.m. on September 12,

13. Tr. 14.

14. Tr. 14–15.

15. Tr. 15–17, 39–40, 41.

16. Counsel for both sides agreed in closing arguments at the evidentiary hearing that Exhibit A was an application for title. (Tr. 46, 53).

2012. Mr. Luczak prepared that document on his typewriter at his office, after he left the parking lot location where the auction sale occurred, and he signed this typed document between 5:00 p.m. and 7:00 p.m. on September 12.[17]

Because these actions by Mr. Luczak occurred after Debtor's bankruptcy petition was filed, they were in violation of the automatic stay. *See e.g.,* 11 U.S.C. § 362(a)(3) (automatic stay, "applicable to all entities," of "any act . . . to exercise control over property of the [bankruptcy] estate"). And the ownership of the Debtor's motorcycle did not change from the Debtor (and upon filing of the bankruptcy petition, the bankruptcy estate); to the purchaser Mr. Luczak until after the bankruptcy petition was filed and the automatic stay had arisen. At the moment the Debtor filed his bankruptcy petition at 4:44 p.m. on September 12, 2012, the motorcycle therefore became property of the bankruptcy estate, under 11 U.S.C. § 541(a)(1), subject to the Debtor's claimed exemption in the motorcycle.[18]

At the evidentiary hearing, counsel for the Court Officers argued that when the Court Officer Mike Jones gave Mr. Luczak the signed Bill of Sale (Ex. B), that completed the sale and transferred the ownership of the motorcycle to the purchaser Mr. Luczak. In support of this argument, counsel cited the case of *Perry v. Golling Chrysler Plymouth Jeep, Inc.,* 477 Mich. 62, 729 N.W.2d 500 (2007), and Mich. Comp. Laws § 257.236a(2).[19] But this argument is contrary to what this Court held regarding Michigan law on this subject in its Previous Opinion, and the Court stands by its earlier reasoning and holding.

Neither the *Perry* case nor § 257.236a(2) supports the Court Officers' argument here. The cited statute merely imposes a duty upon the transferee who purchases a motor vehicle at an execution sale, to "promptly mail or deliver to the secretary of state the last certificate of title, if the transferee has possession of the certificate, the application for a new certificate of title in the form prescribed by the secretary of state, and a certification upon a form prescribed by the secretary of state, made by the officer of the court who conducted the sale, setting [forth] the date of the sale, the name of the purchaser, [and certain other information]." Mich. Comp. Laws § 257.236a(2). In this case the Bill of Sale given by the Court Officer to Mr. Luczak at the auction, DX–B, was a "certification . . . made by the officer of the court who conducted the sale," as required by the statute just quoted. And the "Statement of Vehicle Sale" document prepared and signed by Mr. Luczak, DX–A, was Mr. Luczak's "application for a new certificate of title" referred to in the statute. But nothing in this statute says *when* a transfer of ownership of a vehicle that is sold at an execution sale is deemed effective. Only § 257.233(9) speaks to that, as the Court has previously ruled.

Similarly, the *Perry* case does not support the Court Officers' argument. That case concerned a prior version of § 257.233(9), which stated that the effective date of a transfer of interest in a vehicle is "the date of execution of either the application for title or the assignment of the certificate of title." The *Perry* court held that the "execution" of the application is deemed to occur when the transferee signs the document, rather than

---

**17.** Tr. 22–23, 32–34.

**18.** The Debtor claimed an exemption in the amount of $1,100.00 in the motorcycle, under

11 U.S.C. § 522(b)(2), in Schedule C filed with his bankruptcy petition (Docket # 1).

**19.** Tr. at 9–12, 44, 47, 49–50.

when the transferee actually delivers the application to the Secretary of State. *Perry*, 729 N.W.2d at 501–03. The *Perry* case, therefore, does not support the Court Officers' argument that under the current version of the statute, the transfer of ownership of the motorcycle became effective to make Mr. Luczak the owner at the moment the Court Officer gave Mr. Luczak the signed Bill of Sale. As the Court has found earlier in this opinion, the Bill of Sale was not signed by the purchaser Mr. Luczak, and it was neither an "application for title" nor an "assignment of the certificate of title." For each of those independent reasons, the delivery by the Court Officer to Mr. Luczak of the signed Bill of Sale, by itself, did not have the legal effect of changing ownership of the motorcycle to Mr. Luczak.

The Court next will address a new argument that was made for the first time by Debtor's counsel during the evidentiary hearing. Debtor argued that the application for title that Mr. Luczak sent to the Secretary of State was defective. This is so, Debtor argues, because neither Mr. Luczak's application for title, DX–B, nor any other document submitted by Mr. Luczak to the Michigan Secretary of State when he applied for title of the motorcycle, contained an odometer reading statement for the motorcycle signed by the "transferor," as required by Mich. Comp. Laws § 257.233a(1). But that statutory requirement does not apply to a transfer of a "vehicle that is 10 years old or older." Mich. Comp. Laws § 257.233a(5)(c). The motorcycle in question is a model year 2002 Suzuki motorcycle, as shown by DX–A and B, and the Debtor presented no evidence that at the time of the 2012 auction sale the motorcycle was less than 10 years old. For these reasons, the Court rejects the Debtor's argument that a missing odometer statement signed by the "transferor" was required in order to val-idly transfer ownership of the motorcycle to Mr. Luczak.

## C. What consequences flow from Rick Luczak's violation of the automatic stay?

### 1. The Court Officers

■ For the reasons stated above, the Court finds that neither of the Court Officers, Mike Jones and Victor Lotycz, violated the automatic stay by any actions they took relating to the auction sale of the Debtor's motorcycle. All of the actions that they took, as part of the sale process leading to the change in ownership of the motorcycle to Mr. Luczak, were done before the bankruptcy petition was filed and before the automatic stay arose. After Court Officer Jones concluded the auction, accepted Mr. Luczak's bid, gave him a signed Bill of Sale for the motorcycle (DX–B) and gave him possession of the motorcycle—all of which occurred before the Debtor filed bankruptcy at 4:44 p.m. on September 12, 2012—there was nothing more that Court Officer Jones could have done either to facilitate the completion of the change of ownership of the motorcycle, or to try to prevent that change of ownership from occurring. Rather, at the time the bankruptcy petition was filed, the only thing remaining to occur, in order for the ownership of the motorcycle to change to Mr. Luczak, was *Mr. Luczak's* signature on the application for title (DX–A). While that event occurred after the filing of the bankruptcy petition, no later than 7:00 p.m. on September 12, 2012, that was an act done only by the purchaser Mr. Luczak, which involved no action or participation by either of the Court Officers. Nor did the Court Officers have any ability or authority to prevent Mr. Luczak from taking his actions after the bankruptcy petition was filed, or to unilaterally "undo"

what they had done before the bankruptcy petition was filed.

Because the Court Officers did nothing whatsoever that constituted a violation of the automatic stay in this bankruptcy case, no relief of any kind could or should have been ordered against them by this Court for any violation of the automatic stay.

## 2. Rick Luczak

■ With respect to Mr. Luczak, the Court has found that his action in signing the application for title was a violation of the automatic stay. But the Court concludes that it should not order any relief against Mr. Luczak for his stay violation.

First, the Debtor presented no evidence at the evidentiary hearing that either the Debtor or anyone else made Mr. Luczak aware that the Debtor had filed bankruptcy, before Mr. Luczak signed the application for title, no later than 7:00 p.m. on September 12, 2012. Mr. Luczak was the only witness who testified at the evidentiary hearing, and he testified that he did not recall the Debtor telling him that he had

filed bankruptcy, at any time at or after 4:44 p.m. on September 12, 2012, and before Mr. Luczak signed the application for title.[20] So the Debtor has failed to prove that anyone made Mr. Luczak aware, at or after the time he filed bankruptcy at 4:44 p.m. on September 12, 2012 and before 7:00 p.m. that day, that he had filed bankruptcy.[21] Given these circumstances, combined with the fact that Mr. Luczak's actions which violated the automatic stay were done only slightly more than two hours after the bankruptcy petition was filed, at most, the Court concludes that no action should be taken against Mr. Luczak. The change of ownership of the motorcycle to Mr. Luczak, while *voidable* as a violation of the automatic stay, should not be actually voided, because of the "equitable circumstances" rule stated by the Sixth Circuit in the *Easly v. Pettibone* case, quoted earlier in this opinion. Under that rule, actions taken in violation of the automatic stay, while voidable, are not to be actually voided "where the debtor unreasonably withholds notice of the stay and

---

**20.** *See* Tr. 34–36.

**21.** In his three affidavits, filed months before the evidentiary hearing, the Debtor swore that Mr. Luczak was told that the Debtor had filed bankruptcy on September 12. But there are at least three problems precluding the Court from considering these affidavit statements by the Debtor. *First,* as noted earlier in this opinion, the Debtor Mr. Dixon did not testify at the evidentiary hearing, and because none of the affidavits were admitted into evidence as an exhibit at the evidentiary hearing, the Court will not consider them. *Second,* the affidavit of Mr. Dixon, dated December 17, 2012, says that "[a]t approximately 4:15 p.m. Mike Jones walked over to Rick Luczak and told him that I filed bankruptcy." (Dixon Aff., Ex. A attached to Docket # 31 at ¶ 7.) Even if the Court were to find that this is true, when that statement was made to Mr. Luczak it was a *false* statement. This is because at 4:15 p.m. on September 12, 2012, the Debtor had in fact not yet filed bankruptcy; that did

not occur until the Debtor's attorney electronically filed Debtor's bankruptcy petition at 4:44 p.m. that day. *Third,* the only thing the Debtor stated in his other two affidavits on this subject was that Mr. Luczak was "placed on notice by me that I had filed for chapter 7 bankruptcy protection prior to buyer taking possession of the motorcycle." (Dixon Aff. dated October 9, 2012, Ex. 5 attached to Docket # 16 at ¶ 5; Dixon Aff. dated November 8, 2012, Ex. attached to Docket # 23 at ¶ 5). To the extent these affidavit statements are referring to the more specific statement made in the Debtor's December 17, 2012 affidavit, quoted above, the statement when made, "at approximately 4:15 p.m.," was a false statement. Moreover, the Court has found, based upon the unrefuted testimony of Mr. Luczak at the evidentiary hearing, that Mr. Luczak took possession of the motorcycle after the auction sale by no later than 4:30 p.m., several minutes *before* the Debtor actually filed bankruptcy at 4:44 p.m.

the creditor would be prejudiced if the debtor is able to raise the stay as a defense." 990 F.2d at 911. This rule applies here, so the Court cannot and will not actually void any aspect of the auction sale of the Debtor's motorcycle that occurred.

### D. The relief to be granted

For the reasons stated in this opinion, the Court concludes that it must grant the Court Officers' motion to vacate the Voiding Order, by which this Court initially declared the sale of the motorcycle to be void, and ordered that the motorcycle be returned to the Debtor. This result is further supported by the fact that the motion filed by the Debtor, upon which the Court granted the Voiding Order originally, misstated several important facts—namely, it clearly implied, in ¶¶ 4 and 5, that the Court Officer conducted the auction sale after the Debtor had actually filed his bankruptcy petition; and in ¶ 7, it stated that the Court Officer "transferred the title to the buyer on September 14, 2012 along with the Bill of Sale." [22] Each of these allegations have proven be untrue, as the Court has found. Under the circumstances then, the Court will vacate the Voiding Order. The sale of the Debtor's motorcycle will not be voided, but rather will stand.

With respect to the Debtor's motion seeking sanctions against Court Officer Mike Jones and Rick Luczak, including sanctions for their alleged violation of the Voiding Order by failing to return the motorcycle to the Debtor, the Court finds that such relief is inappropriate under the circumstances. First, the Voiding Order now is being vacated as having been erroneously entered. Second, the Court Officers did not simply ignore the Voiding Order; rather, promptly after the Voiding Order was entered, Officer Jones filed his motion to set aside the Voiding Order. Third, even if the Court Officer or Mr. Luczak could be found to have disobeyed the Voiding Order by failing to return the motorcycle to the Debtor, the Court has discretion *not* to sanction them, and will exercise that discretion by refusing to grant any sanctions or other relief in favor of the Debtor. *See Johnston Environmental Corp. v. Knight (In re Goodman )*, 991 F.2d 613, 620–21 (9th Cir.1993)(sanctions under the bankruptcy court's civil contempt powers is permissive and discretionary, not mandatory); *cf. In re Perviz*, 302 B.R. 357, 370 & n. 4 (Bankr.N.D.Ohio 2003) (citations omitted)("[a] creditor found in contempt of violating the discharge injunction, is, in the court's discretion, subject to sanctions" and that "awarding damages for contempt under [11 U.S.C.] § 524(a) is ... discretionary").

To the extent the Court Officer Motion seeks sanctions against the Debtor in the form of an award of attorney fees and costs, the Court in its discretion will deny that request. The Court concludes that such relief is unwarranted.

### V. Conclusion

For the reasons stated in this opinion, the Court will enter an order granting the Court Officer Motion, and denying the Debtor's Motion.

---

**22.** Docket # 23 at ¶¶ 4, 5, 7.